# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2011

No. 10-10875
Summary Calendar

Lyle W. Cayce
Clerk

STEVEN CREAR, SR., Secured Party,

Plaintiff – Appellant

v.

JP MORGAN CHASE BANK N.A.,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-463

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

In this diversity case, Steven Crear, Sr., a pro se plaintiff, appeals a grant of summary judgment in favor of JPMorgan Chase Bank. Crear sued JPMorgan and several co-defendants for violating multiple Texas consumer protection laws when they refused to produce an original note or deed of trust before initiating foreclosure proceedings. Because of these violations as well as unmet unilateral

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10875

demands that Crear believed created a contract, Crear asserted the defendants owed him $65 million. On appeal, Crear challenges the district court's jurisdiction and in the alternative contends that the contract obligated JPMorgan to pay him. We disagree and AFFIRM summary judgment. Crear also challenges the dismissal of his claims against three co-defendants, which we DISMISS for lack of jurisdiction.

I.

To purchase property in Dallas, Crear executed a promissory note through Washington Mutual Bank, which was secured with a concurrent deed of trust encumbering the property. In 2009, foreclosure proceedings were initiated on the property, and Crear received a letter indicating the payoff amount required to prevent the foreclosure. Crear responded by sending foreclosure counsel a copy of the letter, upon which Crear wrote illegible and confusing language. It appears Crear intended this document to be valued at $136,633.24—the required payoff amount—but the document was not legal tender.

Along with the copy of the letter, Crear sent a document entitled "Conditional Acceptance Administrative Procedure," which cited incoherent case law from a variety of jurisdictions in an attempt to suggest the defendants had violated the Truth in Lending Act. The document then listed thirty-two demands, including producing the original promissory note for Crear to review.[1] Lastly, the Conditional Acceptance stated "[f]ailure to reply will result in a

---

[1] The Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note. *See* TEX. PROP. CODE ANN. §§ 51.002, 51.0025 (establishing the notice required prior to a foreclosure sale pursuant to a power of sale).

No. 10-10875

complete Administrative Process," with compensatory penalties up to four times the principal amount of the loan and punitive damages up to two hundred times the compensatory amount. The letter did not provide any legal authority for these damages nor did it explain what administrative process Crear intended to follow.

When Washington Mutual did not respond to Crear's Conditional Acceptance, he sent foreclosure counsel a letter stating "your client is now at fault and in agreement to the claim and lien at the 'sum certain' as so claimed." Further, the letter stated that Washington Mutual agreed to the Conditional Acceptance by its "silence, agreement and general acquiescence." A few days later Crear sent a letter stating that by remaining silent, Washington Mutual "fully agreed" that it owed Crear over $65 million in damages.

In December 2009, Crear filed suit in state court against JPMorgan, Washington Mutual, Deutsche Bank National Trust Company, and Mortgage Electronic Registration Systems, Inc. (MERS). Crear sued for violations of the Texas Property Code, the Texas Business and Commerce Code, the Texas Finance Code, and the Texas Deceptive Trade Practices Act, as well as common law claims. JPMorgan, the only defendant to appear, removed the action on diversity grounds and filed a motion for summary judgment in May 2010. Crear failed to respond to the summary judgment motion and instead challenged the district court's jurisdiction. On July 22, the magistrate judge recommended that JPMorgan's motion be granted. On August 13, the magistrate judge recommended that Crear's claims against MERS, Deutsche Bank, and Washington Mutual be dismissed for his failure to serve these defendants. On August 19, the district court granted summary judgment in favor of JPMorgan.

3

No. 10-10875

Crear timely filed his notice of appeal on August 27.  On September 10, the district court dismissed Crear's claims against MERS, Deutsche Bank, and Washington Mutual.

## II.

We review a grant of summary judgment using the same standard of review as the district court.[2]  A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A moving party may show there is no genuine issue for trial by pointing out the absence of evidence supporting the nonmoving party's case.[5]  The nonmoving party, who will have the burden of proof at trial, must then come forward with summary judgment evidence establishing the existence of a genuine issue.  We consider all evidence "in the light most favorable to the party resisting the motion."[6]

We hold pro se briefs to less stringent standards than formal pleadings drafted by lawyers.[7]  However, pro se litigants must brief the arguments in order

---

[2] *See Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 257 (5th Cir. 2001).

[3] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

[6] *Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983).

[7] *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

No. 10-10875

to preserve them,[8] and litigants should reasonably comply with the standards of Rule 28 of the *Federal Rules of Appellate Procedure*.[9]

III.

A.

Crear first claims that the parties lacked complete diversity and therefore the district court did not have jurisdiction. Specifically, Crear contends that MERS is a citizen of Texas because it maintains a data center in Plano, Texas. For diversity purposes, a corporation is only a citizen of the states in which it is incorporated or maintains a principal place of business.[10] A corporation "is not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction."[11] If MERS maintained a data center in Texas, it is subject to personal jurisdiction in that state, but for diversity purposes, its citizenship is tied to its principal place of business (Virginia) or its state of incorporation (Delaware). MERS is not a citizen of Texas.

The parties in this case are completely diverse. Crear is a citizen of Texas.

---

[8] *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

[9] *See id.* at 224–25; *see also Grant v. Cueller*, 59 F.3d 523, 524 (5th Cir. 1995) ("Although we liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28." (footnote omitted)).

[10] *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) (citing 28 U.S.C. § 1332(c)(1)).

[11] *Id.* at 317.

No. 10-10875

JPMorgan is a citizen of Ohio, as designated by its articles of association.[12] Deutsche Bank and Washington Mutual were both citizens of California. The amount in controversy is not a disputed element. Accordingly, the district court properly exercised diversity jurisdiction.

## B.

Even if the district court had diversity jurisdiction, Crear argues that the court should have abstained from deciding a matter of state law. We review a district court's decision not to abstain under an abuse of discretion standard.[13] Crear relies on *Burford v. Sun Oil Corp.*[14] to suggest that the district court should have declined to exercise its jurisdiction. The Supreme Court considers *Burford* abstention to be "an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it."[15] Indeed, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"[16] The Court has held that *Burford* permits a federal court to abstain from a case "only if it presents difficult questions of state law

---

[12] *See id.* at 318 (finding that for diversity purposes a national bank is the citizen of the state that its articles of association designate as its main office).

[13] *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 144 (5th Cir. 2010).

[14] 319 U.S. 315 (1943).

[15] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotation marks omitted).

[16] *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (alteration in original).

No. 10-10875

bearing on policy problems of substantial public import . . . or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[17]

Our court recognizes five factors a court should weigh when deciding whether to abstain under *Burford*:

> (1) whether the cause of action arises under state or federal law . . . ; (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.[18]

This case involved well-settled principles of Texas state law. The mere fact that allegations were asserted under state law does not mean that the district court should have abstained. There were no complex regulatory matters that would be better addressed in a state forum. Rather, the district court could ably apply Texas law to the facts at hand. Further, the adjudication of Crear's case in federal court would not disrupt Texas's interests in developing a coherent consumer protection policy. Therefore, the district court did not abuse its discretion in failing to abstain from deciding Crear's claims.

## C.

Crear does not challenge the district court's legal conclusions on the Texas statutory or common law claims. Nor does Crear explain why he failed to properly respond to JPMorgan's motion for summary judgment. Instead, his challenge on the merits is limited to assertions that the district court improperly

---

[17] *Quackenbush*, 517 U.S. at 726–27 (internal quotation marks and citations omitted).

[18] *Sierra Club*, 627 F.3d at 144 (quoting *Wilson*, 8 F.3d at 313).

No. 10-10875

made a credibility determination on Crear's "Affidavit of Truth" and that the district court deprived Crear of his right to file and enforce a commercial lien.

No document in the record is labeled "Affidavit of Truth," and the district court did not challenge the credibility of any of Crear's affidavits explicitly. Rather, the district court concluded that Crear had failed to produce competent evidence to show a genuine issue of material fact for any of his claims. Crear may be implying that the district court did not give full consideration to all the statements in his affidavits. If so, the district court's limited reliance on the affidavits was proper. Crear's assertions extended far beyond his personal knowledge and such assertions could not be considered on summary judgment.[19] Statements in the affidavit supported by Crear's personal knowledge were properly considered by the district court.

It is not apparent what Crear means by his right to file and enforce his commercial lien, but he seems to assert that the Conditional Acceptance Administrative Procedure he sent to foreclosure counsel created a contractual obligation that required the defendants to pay him $65 million. Crear admits that the defendants never agreed to the Conditional Acceptance Administrative Procedure, but he contends that defendants obligated themselves to pay $65 million because they did not respond to Crear's unilateral demands. Assuming Crear's document was an offer to contract with the defendants, the offer was never accepted and no valid contract was created.[20] The only valid contracts between Crear and the defendants were the promissory note and deed of trust.

---

[19] *See Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (holding that affidavits offered by a nonmoving party could not be considered at summary judgment because they were not based on personal knowledge).

[20] *See* 1 WILLISTON ON CONTRACTS § 4:1 (4th ed. 2010).

No. 10-10875

Accordingly, the district court properly granted JPMorgan's motion for summary judgment.

## IV.

JPMorgan was the only defendant that responded to the suit. After Crear filed his appeal, the district court dismissed without prejudice Crear's claims against Deutsche Bank, MERS, and Washington Mutual because these parties were not properly served. Crear failed to amend his notice of appeal to include this judgment of dismissal, and as a result, JPMorgan contends that Crear waived any right to challenge this finding. Our court follows "a policy of liberal construction of notices of appeal . . . in situations where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party,"[21] but we have previously held that an appellant could have no intent to appeal an order that was filed *after* the appeal notice.[22]

Here, the magistrate judge's report recommending dismissal of the co-defendants was issued before the JPMorgan judgment that Crear appealed. In the appealed order, the district court did not specifically accept the dismissal recommendation for the co-defendants, but the judgment included a Fed. R. Civ. P. Rule 54(b) explanation for why the court could issue a final judgment for only

---

[21] *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. July 1981) (per curiam).

[22] *See Fiess v. State Farm Lloyds*, 392 F.3d 802, 806–07 (5th Cir. 2004). In *Fiess*, the order plaintiffs wished to appeal contained a new argument that was not proposed in the arguments of the prior orders. In contrast, Crear appeals an order on a claim that was intertwined with the final judgment. *Cf. Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997) (finding that a notice of "appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment").

No. 10-10875

one of the defendants. The judgment stated: "Because no other defendant has been properly served or appeared herein, there is no just reason for delay." Under these circumstances, Crear, as a pro se plaintiff, might have believed that the court was following the magistrate judge's recommendation to dismiss the other defendants, even though the court did not formally dismiss the defendants until a few weeks later. Crear referenced the dismissal in his appellate brief and included the final dismissal judgment in his record excerpts. JPMorgan, having briefed the issue, was not prejudiced.

Nonetheless, Crear is here on the Rule 54(b) certificate, which necessarily means that other parties remained after the entry of the challenged order. Crear did not amend his appeal to include judgments other than the Rule 54(b) grant of summary judgment; therefore, we do not have jurisdiction over the appeal challenging the dismissal of Deutsche Bank, MERS, and Washington Mutual.[23]

As Crear is pro se, we pause to explain that his challenge to the dismissal of the remaining parties had little likelihood of success.[24] Texas requires strict compliance with its rules of service. "Actual notice to a defendant, without

---

[23] *See C.A. Marine Supply*, 649 F.2d at 1056 ("Where the appellant notices the appeal of a specified judgment only . . . this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.").

[24] Crear offered the district court no explanation for his failing to serve Deutsche Bank and did not explicitly challenge Deutsche's dismissal in his appellate brief. Even without the jurisdictional constraints, our court could not consider any challenge to Deutsche Bank's dismissal. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 100 (5th Cir. 1995) (holding that "[g]enerally, appellate courts will not consider issues not urged in the district court except when the failure to do so would result in grave injustice" and noting that this rule applies to pro se plaintiffs); *see also Al-Ra'id v. Ingle*, 69 F.3d 28, 31 (5th Cir. 1995) (finding that a pro se plaintiff abandoned a claim when his brief does not inform the appellate court of what alleged error the district court made).

No. 10-10875

proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against him."[25]  Further, "jurisdiction is dependent upon citation issued and served in a manner provided for by law."[26]  Texas law provides that a plaintiff may serve a nonresident defendant using the Texas long-arm statute when the nonresident fails to maintain a registered agent for service of process.[27] Washington Mutual maintained a registered agent in Texas. Crear did not first attempt to serve this agent, as required by Texas law.[28]

MERS did not maintain a registered agent in Texas.  The Texas long-arm statute requires that documents submitted to the Secretary of State for service indicate the nonresident's home office address.[29] Under Texas law, service is not effective "[i]f nothing on the face of the record shows the forwarding address was the defendant's home or home office."[30] The home office of MERS is in Virginia. The record reflects that Crear did not provide the Secretary of State with this address.

---

[25] *Wilson v. Dunn*, 800 S.W. 2d 833, 836 (Tex. 1990).

[26] *Id.*

[27] TEX. CIV. PRAC. & REM. CODE ANN. § 17.044.

[28] *See McKanna v. Edgar*, 388 S.W. 2d 927, 929 (Tex. 1965) (holding that before the Secretary of State may be substituted for service, the plaintiff must demonstrate that the defendant has no designated agent upon whom service may be made); *Mobilevision Imaging Servs., LLC v. LifeCare Hosps. of N. Tex.*, 260 S.W. 3d 561, 565 (Tex. App. 2008—Dallas 2008, no pet.) (reversing a default judgment when the plaintiff served the defendant through the long-arm statute but did not allege that the defendant had failed to designate or maintain a resident agent for service of process).

[29] TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a).

[30] *Wachovia Bank of Del., N.A. v. Gilliam*, 215 S.W. 3d 848, 849 (Tex. 2007) (internal quotation marks omitted).

11

No. 10-10875

V.

The district court's grant of summary judgment in favor of JPMorgan is AFFIRMED, and the appeal from the dismissal without prejudice of Deutsche Bank, MERS, and Washington Mutual is DISMISSED for want of jurisdiction.